

# The Attorney General of Texas

May 5, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Robert Bernstein, M.D.
Acting Commissioner of Health
Texas Department of Health
1100 West 49th Street
Austin, Texas 78756

Opinion No. MW-179

Re: Whether the Department of Health may purchase supplies from a business owned by a member of the Texas Board of Health.

Dear Dr. Bernstein:

You have requested our opinion as to whether the Texas Department of Health may purchase supplies from a business owned by a member of the Board of Health.

The Texas Board of Health employs the Commissioner of Health, who is designated the "executive head of the Department." Articles 4418a, 4418d, V.T.C.S. The Commissioner is required to "perform the duties assigned to him by the Board," and he "serve[s] at the will of the Board." Id. Article 4419c, V.T.C.S., prescribes to the Department certain duties with regard to the treatment of crippled children:

> Sec. 3. The Crippled Children's Division of the State Department of Health is empowered to take census, make surveys and establish permanent records of crippled children and children who have cancer; to procure medical and surgical service for eligible children, provided that only physicians legally qualified to practice medicine and surgery in Texas be employed for purposes of diagnosis and treatment, that not more than the customary minimum fees be paid for such services, and that physicians or surgeons so employed shall be approved by the State Board of Health as qualified to render such service; to select and designate hospitals for the care of children contemplated by this Act, and to take such other steps as may be necessary in order to accomplish the purposes of this Act.

p. 568

    At the discretion of the State Department of Health, transportation, <u>appliances, braces and material necessary in the proper handling of crippled children</u> or children who have cancer <u>may be in part or entirely provided</u>. Such appliances, braces and material, being a part of the care and treatment program and necessary to the physical restoration of the individual crippled child as defined in this Act or a child who has cancer, shall not be considered to be state-owned personal property and shall be excluded from the personal property inventory required of state-owned property; and all such property including appliances, braces, and materials, being a part of the care and treatment program, and which are now being accounted for under the provisions of the present system of accounting shall be deleted from and not required after the passage and effective date of this Act. The State Department of Health, however, shall maintain at all times a complete record of such appliances, braces and materials provided and such records shall be verified by the State Auditor.

    <u>The State Department of Health</u> is directed to provide in Rules and Regulations, the necessary details for the conduct of this work, in accordance with the purposes of this Act, which <u>shall permit as far as possible, the free choice of patients in their selections of physicians and hospitals, and shall arrange with hospitals, brace departments and other services providing for crippled children's work</u> and children who have cancer, compensation for such services, provided that such fees or charges shall not exceed the average charges for the same services rendered to patients in the hospitals approved for purposes of this Act.

(Emphasis added).

   The Board of Health approves a list of physicians qualified to treat crippled children, and designates hospitals for their care. Within the ambit of these statutory guidelines, a patient eligible for services under article 4419c, V.T.C.S., selects his own physician, and if a brace or appliance is prescribed for the patient, the physician selects a supplier to furnish the brace. The supplier then submits a state purchase voucher to the Department of Health for payment. You ask whether such payment is permissible when the supplier is an entity wholly or partially owned by a member of the Board of Health.

   In Attorney General Opinion MW-124 (1980), we held a similar arrangement to be void in which a county purchased crushed rock from a company which stored the material at one of five quarries, one of which was partially owned by a county commissioner, who received a royalty for each truckload of rock removed from his quarry. We described this arrangement as one involving

     a contract and claims against the county in which a public official
     has an indirect pecuniary interest, at least, and perhaps a direct
     one.

Although Opinion MW–124 (1980) was based largely upon the applicability of article 2340, V.T.C.S., which requires every county commissioner to take an oath that "he will not be directly or indirectly interested in any contract with, or claim against, the county in which he resides," it also referred to the long established state policy that

> a contract between a public official and the public body of which he is a member is contrary to public policy and therefore void, if the official has any personal pecuniary interest in the contract.

See also Attorney General Opinion MW–34 (1979). See Meyers v. Walker, 276 S.W. 305, 307 (Tex. Civ. App. — Eastland 1925, no writ). See also Bexar County v. Wentworth, 378 S.W.2d 126 (Tex. Civ. App. — San Antonio 1964, writ ref'd n.r.e.); Starr County v. Guerra, 297 S.W.2d 379 (Tex. Civ. App. — San Antonio 1956, no writ).

This office has frequently applied the public policy rationale of Meyers v. Walker, supra., even when no statute was present to render the contract void. In Attorney General Opinion H–916 (1976), it was held that a school district was without authority to contract with a company which employed a member of the district's board of trustees in a managerial capacity. In Attorney General Opinion H–734 (1975), this office said that a school district should not contract with one of its trustees to furnish garbage pickup, even though the trustee operated the only garbage pickup service in the area. See also Attorney General Opinions M–1236 (1972); WW–1362 (1962); O–2306 (1940); O–1589 (1939); O–878 (1939). See art. 6252-9b, V.T.C.S., §§ 6, 8 (statement of general state policy).

In the present instance, a member of the Board of Health presents for payment by the Board of Health a purchase voucher for supplies furnished to a third person. In our opinion, payment of such a claim is prohibited by the doctrine of Meyers v. Walker, supra. It is therefore our view that the Department of Health should not purchase supplies from a business owned by a member of the Board of Health.

### S U M M A R Y

> The Department of Health is prohibited by the doctrine of Meyers v. Walker, 276 S.W. 305 (Tex. Civ. App. — Eastland 1925, no writ) from purchasing supplies from a business wholly or partially owned by a member of the Board of Health.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Susan Garrison
Bob Gauss
Rick Gilpin
Bruce Youngblood